UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
RUTH VIDAL, ELIZABETH CARIAS (Plaintiff),
and MARIA MORFIN,

                          Plaintiff,          **ACTION UNDER 29 U.S.C.§ 216(b)**

      -v.-                                       **COMPLAINT**

ISABEL'S DAY CARE, INC.,
and ISABEL NINO RODRIGUEZ, in her
capacity as an officer and/or owner of
ISABEL'S DAY CARE, INC.,

                       Defendants
-----------------------------------------------------------X

      Plaintiffs RUTH VIDAL, ELIZABETH CARIAS and MARIA MORFIN, by and through their attorneys, STILLMAN LEGAL PC., bring this Action on behalf of themselves and other similarly situated employees of Defendants ISABEL'S DAY CARE, INC. and ISABEL NINO RODRIGUEZ, Individually (collectively, the "Defendants") pursuant to the Fair Labor Standards Act ("FLSA"), 29 USC §§ 201 et seq., the New York Labor Law ("NYLL") § 650 et seq., and any other applicable federal or state labor laws, as recently amended by the Wage Theft Prevention Act ("WTPA"), NYLL § 195(3), NYLL § 191, and related provisions from Title 12 of New York Codes, Rules, and Regulations ("NYCRR"), and alleges upon information and belief, as follows:

## <u>NATURE OF THE ACTION</u>

      1.  This Complaint seeks to recover, inter alia, unpaid minimum and overtime wage compensation for the Plaintiffs, former employees of Defendant ISABEL'S DAY CARE, INC., a New York Corporation with offices at 220 Eastchester Rd, New Rochelle, NY 10801, and its principal, Defendant ISABEL NINO RODRIGUEZ, where the Plaintiffs were employed primarily as teachers and childcare workers.

2.  At all relevant times, Defendants, in a gross and willful violation of the law, were obligated under applicable New York State law to pay and compensate the Plaintiffs at a minimum rate of $15.00 per hour (the "minimum wage"); however, the Plaintiffs were unjustly and unlawfully compensated at a rate of $10, $9, $8, $7, and $6 per hour or $300, $375, $405, $450 and $540 per week for a 40-hour workweek.

3.  At all times relevant hereto, Defendants wererequired, under relevant New York State law and the Fair Labor Standards Act, but willfully failed to compensate the Plaintiffs with overtime pay at one and one-half the regular rate for work in excess of forty (40) hours per work week.

4. However, despite such mandatory pay obligations, Defendants, with willful disregard for the law, only compensated the Plaintiffs at a rate of (I) $10, $9, $8, $7, and $6 per hour and failed to pay the Plaintiffs their lawful overtime pay for the period from September 15, 2022, until February 15, 2023, and  again from April 11, 2023, until October 26, 2023, March 2022 until September 2023, and July 2017 until November 28, 2023, where they worked well in excess of forty (40) hours per workweek.

5. The unlawful conduct of the Defendants was not limited to the Plaintiffs but also affected  all other employees at ISABEL'S DAY CARE, INC. who were employed as teachers and childcare workers during the relevant period. The Defendants, in clear violation of the law, maintained a systemic and willful policy of requiring the Plaintiffs and other employees to work without providing the overtime compensation mandated by federal and state law and regulations.

6.  The Plaintiffs also bring this action, including injury in fact claims, under the Wage Theft Prevention Act for the Defendants' willful and deliberate failure to provide written notice of wage rates and maintain accurate record keeping, in direct violation of said laws. Furthermore, at all relevant times, Defendants consciously and willfully failed

to comply with the requirements of the FLSA and the NYLL.

7.  Accordingly, the Plaintiffs now bring this Action on behalf of themselves and those other similarly situated individuals, for federal and state claims relating to unpaid minimum wages, overtime wages, unpaid spread-of-hours wages, failure to maintain records pursuant to the FLSA, 29 USC §§ 201 et seq., NYLL § 650 et seq., as recently amended by the WTPA, NYLL § 195(3), and injury in fact claims under the WTPA, as well as those related provisions in Title 12 of the NYCRR.

8.  In connection therewith, the Plaintiffs seek compensatory damages, liquidated damages, spread of hours pay, pre-judgment and post-judgment interest, and attorneys' fees and costs pursuant to the FLSA and NYLL.

 collective9.  The Plaintiffs further seek certification of this action as a action on behalf of themselves and all other similarly situated employees, pursuant to 29 U.S.C.§ 216(b).

## JURISDICTION AND VENUE

10.  This Court has jurisdiction over this action under 28 USC § 1331, 29 USC §§ 216(b)(c), and 217; and 28 USC § 1337.

11.  This Court has supplemental jurisdiction over the New York state law claims under the principles of pendent and ancillary jurisdiction pursuant to 28 USC § 1367.

12. This Court is empowered to issue a declaratory judgment pursuant to 28 USC §§ 2201 and 2202.

13. Venue is proper in the Southern District of New York, pursuant 28 USC § 1391(b)(c), because Corporate Defendants reside in this District, the Plaintiffs reside in this District, and because all or a substantial part of the events or omissions giving rise to the claims occurred herein.

## PARTIES

**Plaintiff**

14. Plaintiff RUTH VIDAL ("VIDAL") is and was at all times relevant hereto an individual residing in New York.

15. Plaintiff VIDAL was formally hired by the Defendant, ISABEL'S DAY CARE, INC., a New York Corporation, on September 15, 2022, and remained employed until February 15, 2023. She was then rehired on April 11, 2023, and remained in employment until October 26, 2023. Her primary duties as a childcare worker were explicitly dictated by the Defendants and included supervising children, preparing meals, and maintaining cleanliness. She worked under a strictly devised schedule by the Defendants, who exercised their authority by directly giving orders and instructions to her on a daily basis. During her employment, VIDAL's work schedule, duties, and responsibilities were directly controlled by Defendant ISABEL NINO RODRIGUEZ, who also had the authority to hire, fire, and discipline her. Throughout her employment, CARIAS was under the direct supervision and control of Defendant ISABEL NINO RODRIGUEZ, who had the authority to hire, fire, discipline, and dictate her work schedule and duties. Throughout her employment, MORFIN's work schedule, duties, and responsibilities were directly controlled by Defendant ISABEL NINO RODRIGUEZ, who had the authority to hire, fire, discipline, and control her work tasks.

16. At all times relevant hereto, Plaintiff VIDAL was a covered employee within the meaning of the FLSA and the NYLL.

17. Plaintiff consents to being named a party herein, pursuant to 29 USC § 216(b), and brings these claims based upon the allegations herein as representative parties of a prospective class of similarly situated individuals under 29 USC § 216(b).

18. Plaintiff ELIZABETH CARIAS ("CARIAS") is and was at all times relevant hereto an individual residing in New York.

19. Plaintiff CARIAS was formally hired by the Defendant, ISABEL'S DAY CARE, INC., a New York Corporation, in March 2022 following a stringent interview process and was employed until September 2023. Her primary duties as a teacher and childcare worker, which included creating educational plans, overseeing children's academic progress, and ensuring children's safety, were assigned and closely monitored by the Defendant. The Defendant dictated her work schedule and she was required to strictly adhere to it. The Defendant exercised authority by providing day-to-day orders and instructions and had the power to discipline her.

20. At all relevant times, Plaintiff CARIAS was a covered employee under the definitions provided by the FLSA and the NYLL, as she was engaged in commerce, or in the production of goods for commerce, or was employed by an enterprise engaged in commerce or in the production of goods for commerce as defined under the FLSA, and was not exempt from the overtime pay requirements of the FLSA or the NYLL.

21. Plaintiff consents to being named a party herein, pursuant to 29 USC § 216(b), and brings these claims based upon the allegations herein as representative parties of a prospective class of similarly situated individuals under 29 USC § 216(b).

22. Plaintiff MARIA MORFIN's Employment ("MORFIN") is and was at all times relevant hereto an individual residing in New York.

23. Plaintiff MORFIN was hired by the Defendant, ISABEL'S DAY CARE, INC., a New York Corporation, in July 2017 following a detailed selection process and remained in employment until November 28, 2023. Her primary duties as a childcare worker included supervising children, organizing activities, and maintaining hygiene and safety standards. These tasks, among others, were assigned directly by the Defendant. Her work schedule was formulated and implemented by the Defendant who also had the

authority to discipline her. The Defendant gave daily orders and instructions, demonstrating their control over her work role.

24. At all relevant times, Plaintiff MORFIN was a covered employee under the definitions provided by the FLSA and the NYLL, as she was engaged in commerce, or in the production of goods for commerce, or was employed by an enterprise engaged in commerce or in the production of goods for commerce as defined under the FLSA, and was not exempt from the overtime pay requirements of the FLSA or the NYLL.

25. Plaintiff consents to being named a party herein, pursuant to 29 USC § 216(b), and brings these claims based upon the allegations herein as representative parties of a prospective class of similarly situated individuals under 29 USC § 216(b).

**Defendants**

26. Defendant ISABEL'S DAY CARE, INC. is, upon information and belief, a duly organized New York Corporation with its principal place of business located at 220 Eastchester Rd, New Rochelle, NY 10801.

27. As per the gathered information, Defendant ISABEL'S DAY CARE, INC. is engaged in interstate commerce. This is evident from its reliance on products like food, toys, and educational materials that are transported across state lines. Moreover, it is noted that the Defendant generates annual gross revenues exceeding $500,000 in the year 2024, excluding excise taxes, confirming their active and deliberate participation in interstate commerce.

28. Upon information and belief, Defendant ISABEL NINO RODRIGUEZ is the President and Chief Executive Officer of Defendant ISABEL'S DAY CARE, INC.

29. Upon information and belief, and at all times relevant to the claims herein, Defendant ISABEL NINO RODRIGUEZ possessed operational control over Defendant ISABEL'S DAY CARE, INC. by reason of their ownership interest, and control of

significant functions of Defendant Corporation that Defendant ISABEL NINO RODRIGUEZ: (i) was known and referred to as "Boss" by the Plaintiffs and the other similarly situated employees of Defendant ISABEL'S DAY CARE, INC., and exercised her authority by directly giving orders and instructions to employees on a daily basis.; (ii) determined the wages and compensation of the employees of Defendants, including Plaintiff; and (iii) established Plaintiff's and other employees work schedules and workload; (iv) maintained employee records; (v) paid the Plaintiffs and the other employees their weekly wages; and (vi) possessed the authority to hire and fire employees, including the direct involvement in the hiring and termination process of the Plaintiffs.

30. Based on the information and belief, Defendant ISABEL NINO RODRIGUEZ has been accused of acting with willful, intentional, and malicious intent. As such, she is classified as an employer under the Fair Labor Standards Act (FLSA), 29 U.S.C. §203d, and the corresponding regulations, 29 C.F.R. §791.2.

## COMMON FACTUAL ALLEGATIONS
### Defendants Constitute Joint Employers

31. Defendants owned and operated ISABEL'S DAY CARE, INC., a corporate entity principally engaged in the provision of childcare services in Bronx, New York. At all relevant times, Defendants ISABEL'S DAY CARE, INC. and ISABEL NINO RODRIGUEZ possessed operational control over the Defendant Corporation, possessed an ownership interest in the Defendant Corporation, and/or controlled significant functions of Defendant Corporation.

32. As a part of their standard business operations, the Defendants maliciously, intentionally, and repeatedly inflicted harm on the Plaintiffs RUTH VIDAL, ELIZABETH CARIAS, and MARIA MORFIN. Each Plaintiff has endured significant harm due to the

Defendants' calculated and severe violations of the Wage Theft Prevention Act (WTPA). The Plaintiffs assert injury in fact claims under the WTPA stemming from the Defendants' deliberate violations. These same violations also affected other employees who were part of the same class. The Defendants have established a pattern and/or policy of violating the FLSA, which included, among other things, the following:

    a. Defendants willfully and knowingly failed to pay employees the applicable minimum rate for work performed for the first forty (40) hours per week;

    b. Defendants knowingly and deliberately failed to pay employees the applicable overtime rate (one and one-half the rate of regular pay) for work performed in excess of forty (40) hours per week

    c. Defendants deliberately and systematically failed to keep accurate records of hours worked by employees as required by the FLSA and NYLL.

    d. Defendants knowingly and systematically failed to provide wage and hour records or pay statements as required by law. This was part of a carefully planned scheme to conceal their violations of wage and hour laws and to take advantage of the Plaintiffs and other employees who are similarly situated and may lack familiarity with wage and hour laws.

33. The defendants have systematically and persistently engaged in their unlawful conduct, in line with a corporate policy deliberately designed to minimize labor costs and unjustly deny employees their rightful compensation. The defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant damage to the Plaintiffs RUTH VIDAL, ELIZABETH CARIAS, and MARIA MORFIN, and the other class members.

34. Defendant ISABEL'S DAY CARE, INC., under the direct control and authority of Defendant ISABEL NINO RODRIGUEZ, acted in the interest of the Defendants with regard to its employees. Defendant ISABEL NINO RODRIGUEZ had the final say in determining the rate and method of employee compensation, and she shared joint

control over the employees, including directly supervising and imposing disciplinary actions.

35. At relevant times, Defendants ISABEL'S DAY CARE, INC. and ISABEL NINO RODRIGUEZ possessed substantial control over Plaintiffs' and other similarly situated employees' working conditions, and over the policies and practices with respect to the employment and compensation of the Plaintiffs, and all similarly situated individuals, referred to herein.

36. Defendants ISABEL'S DAY CARE, INC. and ISABEL NINO RODRIGUEZ jointly employed the Plaintiffs, and all similarly situated individuals, and are Plaintiff's and all similarly situated individuals' employers within the meaning of 29 USC 201 et seq. and the NYLL.

37. Defendants ISABEL'S DAY CARE, INC. and ISABEL NINO RODRIGUEZ constitute a single employer of the Plaintiffs and/or similarly situated individuals, as any business divisions between them are fictional.

38. At all times relevant hereto, Defendants ISABEL'S DAY CARE, INC. and ISABEL NINO RODRIGUEZ were Plaintiff's employers within the meaning of the FLSA, NYLL, and other applicable laws. Such Defendants had the authority and power to hire and fire Plaintiff, and other similarly situated employees, control the terms and conditions of their employment, including work assignments and hours, and determine the rate and method of any compensation in exchange for Plaintiffs' services. Indeed, Defendants supervised Plaintiff's work schedule and conditions of their employment.

39. Defendants further controlled, supervised, guided, and instructed what limited recordkeeping took place which the Plaintiffs contend is deficient pursuant to FLSA and NYLL requirements.

**Plaintiff RUTH VIDAL**

40. Plaintiff worked from approximately September 15, 2022, until February 15, 2023, and then again from April 11, 2023, until October 26, 2023. Her primary work duties were as a childcare worker; she babysat the children.

Plaintiff VIDAL worked from Monday through Friday; her established work schedule was from 9:00 A.M. to 3:00 P.M., without a guaranteed rest period. Despite being scheduled for a 2-hour break, the Plaintiff alleges that she frequently had to continue working and looking out for children during this time, effectively accumulating a total of 30 working hours per week. Subsequently, the Plaintiff resumed her employment with the defendant on April 11, 2023, until October 26, 2023. In this second period, her work schedule was Monday through Friday from 8:00 A.M. to 5:30 P.M., accumulating 47.5 work hours per week. As for compensation, the Plaintiff initially received a weekly salary of $300. However, as of August 2023, her weekly salary was increased to $450.

42. From September 15, 2022, until December 31, 2022, Plaintiff was paid $10 per hour, the underpayment per week was $150, and the total underpayment of that period of time was $2,250. From January 1, 2023, until February 15, 2021, Plaintiff was paid $10 per hour, the underpayment per week was $150, and the total underpayment of that period of time was $900. From April 11, 2023, until July 31, 2023, Plaintiff was paid $6.32 per hour, the underpayment per week was $468.75, and the total underpayment of that period of time was $7,500. From August 1, 2023, until October 26, 2023, Plaintiff was paid $9.47 per hour, the underpayment per week was $318.75, and the total underpayment of that period of time was $3,825. The total amount of unpaid wages is approximately $14,475. All payments were made in cash.

43. Plaintiff VIDAL was not permitted to work at her own convenience but was required to adhere to a strict work schedule devised unilaterally by the Defendants. This

schedule was communicated to her by the Defendants and she had no input into its creation or modification. Furthermore, once scheduled for a shift, Plaintiff VIDAL did not have the liberty to come and go as she pleased; her time and movements were under the control of the Defendants. Defendants ISABEL NINO RODRIGUEZ, who was referred to as "Boss", provided daily orders and instructions, dictating her tasks and duties.

44. Plaintiff VIDAL was a covered employee within the meaning of the FLSA and the NYLL and was not exempt thereunder as her employment position and assignments were not "professional," "executive" or even "administrative" and did not require discretion nor independent judgment. Plaintiff VIDAL's work is properly characterized as menial physical labor.

45. Plaintiff VIDAL regularly handled goods in interstate commerce and other items produced outside of the State of New York.

Plaintiff VIDAL labored without receiving proper minimum and overtime wages throughout her entire employment with Defendants, consistently working in excess of the standard 40-hour workweek. The Defendants never acknowledged nor rectified these payment discrepancies, illustrating a blatant disregard for the Plaintiff's rights, despite Plaintiff VIDAL's multiple efforts to address these issues.

47. Despite the requirements of the FLSA and NYLL, the Defendant willfully failed to provide any form of notification to Plaintiff VIDAL regarding her wages. There were no posted notices, written communications, or verbal explanations provided to her about her wage rate, overtime pay, or any other wage-related matters.

48. Defendants willfully did not provide Plaintiff VIDAL with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

49. Defendants willfully never provided Plaintiff VIDAL with written notice of her rate of pay, employer's regular payday, overtime rate, and such other information as required by NYLL §195(1).

**Plaintiff ELIZABETH CARIAS**

50. Plaintiff has been working with the Defendants from approximately March 2022 until September 1, 2022, and then again from September 2, 2022, until September 2023. Plaintiff CARIAS was employed by Defendants at their establishment situated at 220 Eastchester Rd, New Rochelle, NY 10801. Her assigned duties encompassed roles as a teacher and a childcare worker, which entailed looking after and managing children throughout her work hours. Her tasks were diverse and extensive, including but not limited to, devising and executing teaching plans, overseeing outdoor activities, and meal preparation - all meticulously assigned and directed by the Defendant ISABEL NINO RODRIGUEZ, who wielded executive control over the specific tasks she was obliged to perform.

51. The Plaintiff, ELIZABETH CARIAS, was formally interviewed and hired by the Defendant ISABEL NINO RODRIGUEZ in March 2022 and was employed until September 1, 2022. The terms of her employment, her duties, and her rigorous work schedule were unilaterally and explicitly dictated by the Defendant ISABEL NINO RODRIGUEZ, highlighting her significant authority over the employment relationship., who was known and referred to as "Boss" by the Plaintiffs and the other similarly situated employees of Defendant ISABEL'S DAY CARE, INC., and exercised her authority by directly giving orders and instructions to employees on a daily basis. During her employment, she was subjected to practices that willfully violated the Wage Theft Prevention Act (WTPA), causing her injury in fact. During this first period, her stated work schedule was Monday through Friday from 8:00 A.M. to 5:30 P.M., accumulating a

total of 47.5 hours per week. For this work, the Plaintiff received a weekly compensation of $375. Subsequently, the plaintiff resumed employment with the defendant on September 2, 2022, and worked until September 2023. In this second period, her weekly work schedule remained at 47.5 hours from 8:00 A.M. to 5:30 P.M. Monday through Friday, but her weekly compensation was increased to $405. During both periods of employment, Plaintiff alleges that while she had an allotted 2-hour rest period during the children's naps, she had to continue working and caring for children who did not sleep or require feeding. Therefore, she did not enjoy a real rest period, even though this time was deducted from her pay. The plaintiff wasn't able to record her working hours.

52. From March 1, 2022, until September 1, 2022, Plaintiff was paid $7.89 per hour, the underpayment per week was $393.75, and the total underpayment of that period of time was $10,237.50. From September 2, 2022, until December 31, 2022, Plaintiff was paid $8.52 per hour, the underpayment per week was $363.75, and the total underpayment of that period of time was $6,183.75. From January 1, 2023, until September 1, 2023, Plaintiff was paid $8.52 per hour, the underpayment per week was $363.75, and the total underpayment of that period of time was $12,731.25. The total amount of unpaid wages is approximately $29,152. All payments were made in check.

53. Plaintiff ELIZABETH CARIAS was not permitted to work at her own convenience but was required to adhere to a strict work schedule devised unilaterally by the Defendants. This schedule was communicated to her by the Defendants and she had no input into its creation or modification. Moreover, once scheduled for a shift, Plaintiff CARIAS did not come and go at her pleasure but rather was controlled by Defendants.

54. Plaintiff CARIAS was a covered employee under the FLSA and the NYLL. Her employment position and assignments, which were dictated by the Defendant, did not fall under the "professional," "executive," or "administrative" exemptions. Her tasks were routine and manual in nature, requiring little to no discretion or independent judgment. Plaintiff CARIAS's work is properly characterized as menial physical labor.

55. Plaintiff CARIAS regularly handled goods in interstate commerce and other items produced outside of the State of New York.

56. Plaintiff willfully worked without appropriate minimum and overtime wages from the beginning and until the end of her employment with Defendants, a willful violation of her rights under the FLSA and NYLL.

57. Despite the requirements of the FLSA and NYLL, the Defendant willfully failed to provide any form of notification to Plaintiff CARIAS regarding her wages. There were no posted notices, written communications, or verbal explanations provided to her about her wage rate, overtime pay, or any other wage-related matters.

58. Defendants willfully did not provide Plaintiff CARIAS with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

59. Defendants willfully never provided Plaintiff CARIAS with written notice of her rate of pay, employer's regular payday, and such other information as required by NYLL §195(1).

**Plaintiff MARIA MORFIN**

60. Plaintiff has been working with the Defendants from approximately July 2017 until November 28, 2023. Plaintiff MORFIN was employed by Defendants at their 220 Eastchester Rd, New Rochelle, NY 10801 facility, where Plaintiff MORFIN's responsibilities encompassed a variety of roles such as a childcare worker, which included taking care of children and ensuring their safety. During her employment, she

was willfully subjected to practices that violated the Wage Theft Prevention Act (WTPA), causing her injury in fact.

61. The Plaintiff began her employment with the Defendant in July 2017 and worked until November 28, 2023. During the period from July 2017 to the end of 2017, her work schedule was Monday through Friday from 8:00 A.M. to 6:00 P.M., accumulating a total of 50 hours per week. For this work, the Plaintiff received a weekly compensation of $375. Beginning in 2018 and continuing through February 2022, the Plaintiff's work schedule was extended to 51 hours per week, as she was required to enter at 7:00 A.M. on Fridays to open the facility. In March 2022, the Plaintiff's work schedule changed to Monday through Friday from 8:00 A.M. to 5:30 P.M., but her weekly compensation increased to $540. During her entire employment from July 2017 through November 2023, the plaintiff alleges that, while she had an allotted 2-hour rest period during the children's naptime, she was required to continue to work and attend to children who did not sleep or require care. Therefore, she did not enjoy a real rest period, even though this time was unpaid. In addition, the Plaintiff states that during the first 2 months of each year since 2020, she took vacation and returned to work in March. The plaintiff wasn't able to record her working hours.

62. From May 17, 2018, until December 31, 2018, Plaintiff was paid $7.35 per hour, the underpayment per week was $359.50, and the total underpayment of that period of time was $11,863.50. From January 1, 2019, until December 31, 2019, Plaintiff was paid $7.35 per hour, the underpayment per week was $472.50, and the total underpayment of that period of time was $24,570. From March 1, 2020, until December 31, 2020, Plaintiff was paid $7.35 per hour, the underpayment per week was $472.50, and the total underpayment of that period of time was $20,790. From March 1, 2021, until December 31, 2021, Plaintiff was paid $7.35

per hour, the underpayment per week was $472.50, and the total underpayment of that period of time was $20,790. From March 1, 2022, until December 31, 2022, Plaintiff was paid $11.13 per hour, the underpayment per week was $251.25, and the total underpayment of that period of time was $11,055. From March 1, 2023, until November 28, 2023, Plaintiff was paid $11.13 per hour, the underpayment per week was $251.25, and the total underpayment of that period of time was $9,798. The total amount of unpaid wages due to Defendants' willful misconduct is approximately $98,867.25. All payments were made in check.

63. Plaintiff MORFIN did not work at her own convenience but was required to report to work in accordance with a work schedule devised by Defendants. Moreover, once scheduled for a shift, Plaintiff MORFIN did not come and go at her pleasure but rather was controlled by Defendants.

64. Plaintiff MARIA MORFIN was a covered employee within the meaning of the FLSA and the NYLL and was not exempt thereunder. Her employment position and assignments were not "professional," "executive" or even "administrative" and did not require discretion nor independent judgment. Plaintiff MORFIN's work is properly characterized as menial physical labor.

65. Plaintiff MORFIN regularly handled goods in interstate commerce and other items produced outside of the State of New York.

66. Defendants intentionally failed to pay the Plaintiff appropriate minimum and overtime wages from the beginning and until the end of her employment.

67. No notification, either in the form of posted notices, or other means, was ever given to Plaintiff MORFIN regarding wages as required under the FLSA and NYLL.

68. Defendants did not provide Plaintiff MORFIN with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

69. Defendants never provided Plaintiff MORFIN with written notice of her rate of pay, employer's regular payday, and such other information as required by NYLL §195(1).

## Defendants' General Employment Practices Violations

70. As part of their regular business practices, Defendants, under the direct supervision and authority of Defendant ISABEL NINO RODRIGUEZ, personally conducted the hiring process for Plaintiffs, RUTH VIDAL, ELIZABETH CARIAS, and MARIA MORFIN. Defendant ISABEL NINO RODRIGUEZ unilaterally determined their work schedules and enforced them strictly, without granting any autonomy to the Plaintiffs to negotiate or modify their schedules. The Plaintiffs were required to work according to these dictated schedules without receiving the proper minimum and overtime wages as mandated by federal and state laws due to Defendants' willful actions.

71. By such common policy and practice, Defendants violated Plaintiff's rights under the FLSA and New York Labor Law by not paying them the wages they were owed for the hours they had worked.

72. Defendants failed to post the statutorily required wage and hour posters and did not provide the Plaintiffs RUTH VIDAL, ELIZABETH CARIAS and MARIA MORFIN with statutorily required wage and hour records or statements of pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiff's relative lack of sophistication in wage and hour laws.

73. Upon information and belief, these practices by Defendants were done willfully and intentionally to disguise the actual number of hours the Plaintiffs worked, and to avoid paying the Plaintiffs properly for (i) their full hours worked, (ii) minimum wages, and (iii) overtime wages. This willful and intentional action constitutes a deliberate violation of FLSA and NYLL.

74. The NYLL and Wage Theft Prevention Act require employers to provide all employees with written notice of wage rates. Defendants willfully failed to provide Plaintiffs RUTH VIDAL, ELIZABETH CARIAS, and MARIA MORFIN with such written notice, causing them injury in fact and violating their rights under the NYLL and the WTPA. As such, Plaintiffs RUTH VIDAL, ELIZABETH CARIAS, and MARIA MORFIN assert injury in fact claims due to Defendants' failure to provide the required notices under the WTPA Due to Defendants' failure to maintain accurate records as required by the WTPA, Plaintiffs RUTH VIDAL, ELIZABETH CARIAS, and MARIA MORFIN assert injury in fact claims..

75. Throughout the relevant time period, Defendants paid the Plaintiffs RUTH VIDAL, ELIZABETH CARIAS, and MARIA MORFIN wages without providing an accurate accompanying wage statement and/or annual pay notices required under NYLL §§195(1) and 195(3), causing them injury in fact due to Defendants' willful misconduct.

76. Defendants failed to provide the Plaintiffs RUTH VIDAL, ELIZABETH CARIAS, and MARIA MORFIN with accurate accompanying wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; the name of the employee; the name of the employer; address, and phone number of the employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL §195(3).

## FIRST CAUSE OF ACTION
### (Violation of FLSA Minimum and Overtime Wage / Recordkeeping Provisions)

77. The Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

78. At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 USC § 203(d). Explicitly, Defendant ISABEL NINO RODRIGUEZ, as the head of ISABEL'S DAY CARE, INC., directly hired Plaintiffs RUTH VIDAL, ELIZABETH CARIAS, and MARIA MORFIN. She unilaterally established their work schedules, which were non-negotiable and tightly controlled. She directly handed out daily work orders and enforced strict disciplinary actions for non-compliance. Moreover, Defendant ISABEL NINO RODRIGUEZ solely determined their rate of pay and the method of payment, leaving no room for discussion or negotiation with the Plaintiffs.

79. At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce, and as such constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 USC § 203 (r-s).

80. Defendants, in willful and intentional violation of the FLSA, failed to pay the Plaintiffs the applicable minimum and overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C.§ 207 (a)(1).

81. Defendants' willful and intentional disregard for the law resulted in the Plaintiffs not receiving the applicable minimum and overtime wage within the meaning of 29 U.S.C.§ 255(a).

82. Defendants knowingly and systematically failed to satisfy the FLSA's recordkeeping requirements.

83. Defendants intentionally and consciously violated in their violations of the FLSA's requirements.

84. The Plaintiffs (and the FLSA class members) seek damages for their unpaid lawful minimum and overtime wages, liquidated damages as provided by the FLSA for wage violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper. The Plaintiffs, having suffered significant financial and emotional harm due to the Defendants' deliberate misconduct, seek damages to be determined during the trial.

## SECOND CAUSE OF ACTION
### (Unpaid Minimum and Overtime Wages Under New York Labor Law)

85. The Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

86. The Defendants, who knowingly and deliberately violated the NYLL § 190 *et seq*. and associated rules and regulations, denied the Plaintiffs their rightful minimum wages and the applicable overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

87. Defendants purposefully neglected their duty to pay the Plaintiffs minimum and overtime wages within the meaning of N.Y.Lab.Law § 663.

88. Due to Defendants' violations, which we strongly argue were intentional and calculated, of the NYLL, the Plaintiffs RUTH VIDAL, ELIZABETH CARIAS and MARIA MORFIN are entitled to recover from Defendants their unpaid minimum wages, overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## THIRD CAUSE OF ACTION
### New York Labor Law – Failure to Provide Notice at Time of Hiring

89. The Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

90. Defendants, in what we assert was a deliberate failure, did not provide the Plaintiffs at the time of hiring or at any point thereafter, a notice containing the rate of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular payday designated by the employer; the physical address of the employer's main office or principal place of business; the telephone number of the employer, and anything otherwise required by law, in violation of NYLL § 195(1).

91. Due to Defendants' violations of the NYLL § 195(1), the Plaintiffs are entitled to recover from Defendants statutory damages of Fifty dollars ($50) per workday that the violation occurred, up to a maximum of Five Thousand Dollars ($5,000) pursuant to NYLL § 198 (1-b).

## FOURTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Accurate Wage Statements

92. The Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

93. Defendants have systematically and intentionally failed to provide the Plaintiffs with complete and accurate wage statements throughout their employment listing, *inter alia*, all their regular and any overtime hours of work, their rate of pay, and the basis of pay, in violation of NYLL § 195(3).

94. Due to Defendants' violations of the NYLL, the Plaintiffs are entitled to recover from Defendants' statutory damages of Two Hundred and Fifty dollars ($250) per workday that the violation occurred, up to a maximum of Five Thousand Dollars ($5,000), pursuant to NYLL § 198 (1-d).

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs RUTH VIDAL, ELIZABETH CARIAS, and MARIA MORFIN, who have each suffered an injury in fact due to Defendants' willful violations of

the Wage Theft Prevention Act (WTPA), respectfully request that this Court enter judgment against Defendants ISABEL'S DAY CARE, INC. and ISABEL NINO RODRIGUEZ, as follows:

a. Designation of this action as a collective action on behalf of the FLSA Class Members (asserting FLSA claims and state claims) and prompt issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

b. Declaring that Defendants' violation of the provisions of the FLSA was willful as to Plaintiff;

c. Declaring that Defendants have willfully violated the minimum and overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff;

d. Awarding the Plaintiffs liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C.§ 216(b);

e. Awarding the Plaintiffs damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

f. Declaring that Defendants have willfully violated the recordkeeping requirements of the NYLL with respect to Plaintiff's

compensation, hours, wages; and any deductions or credits taken against wages;

g.    Awarding the Plaintiffs damages for the amount of unpaid minimum and overtime wages, damages for any improper deductions or credits taken against wages;

h.    Awarding the Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum and overtime wage compensation shown to be owed pursuant to NYLL § 663 as applicable;

i.    Awarding the Plaintiffs pre-judgment and post-judgment interest as applicable;

j.    Awarding the Plaintiffs the expenses incurred in this action, including costs and attorney's fees; and

k.    All such other and further relief as the Court deems just and proper.

l.    An award of statutory damages for Defendants' alleged willful failure to provide the Plaintiffs with wage notices at the time of their respective hiring, or at any point thereafter, pursuant to NYLL § 198 (1-b);

m.    An award of statutory damages for Defendants' alleged willful failure to provide the Plaintiffs with complete and accurate wage statements pursuant to NYLL § 198 (1-d);

n.    An award of pre-judgment interest at the highest rate allowed by law, currently nine percent per annum (9%) pursuant to the New York Civil Practice Law and Rules §§ 5001-5004;

o.    An award of post-judgment interest pursuant to 28 U.S.C. §

1961 and/or the New York Civil Practice Law and Rules § 5003;

p.  Such other relief as this Court shall deem just and proper.

Dated: New York, New York
        May 17, 2024

LINA STILLMAN, ESQ.

Lina Stillman, Esq.
Attorneys for Plaintiff
Stillman Legal, P.C.
42 Broadway, 12t Floor
New York, New York 10004
Tel (212) 203-2417
www.StillmanLegalPC.com